# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**RICHARD BETKER,**
        **Plaintiff,**

     v.                                                                               **Case No. 08C0760**

**CITY OF MILWAUKEE, ALLEN**
**GROSZCZYK, EDWARD A. FLYNN and**
**RODOLFO GOMEZ,**
        **Defendants.**

---

## DECISION AND ORDER

Plaintiff, Richard Betker, brings this § 1983 action against several City of Milwaukee police officers, the police chief and the City. Plaintiff claims that defendants violated his constitutional rights in the course of obtaining and executing a "no-knock" search warrant. Before me now is defendants' motion for summary judgment.

## I. BACKGROUND

In July, 2006, Debra Capol called the Milwaukee Police Department's gun hotline and spoke with defendant Rodolfo Gomez. Capol made comments indicating that she did not get along with her sister, Sharon Betker, and asked Gomez if a convicted felon could lawfully possess a firearm. Gomez answered in the negative. Capol then reported that Sharon had a gun in her bedroom in her home in the City of Franklin. Gomez checked Sharon's record and found that she had been convicted of a theft offense some twenty-five years previous, and that she and her husband, Richard Betker, the plaintiff in the present case, owned a home at the address that Capol provided. Several days later, Gomez spoke to Capol again, and Capol states that she told him that plaintiff owned hunting rifles, hunted

illegally, and possibly possessed illegally stuffed game, but that she had not been in the Betker home in years. Thus, Capol could not say whether guns were currently in the home. Subsequently, Gomez verified that plaintiff had held hunting licenses.

On August 4, 2006, Gomez filled out a Milwaukee Police Department form affidavit and based on the affidavit asked a court commissioner to issue a no-knock search warrant for plaintiff's home.[1] In the affidavit, Gomez stated:

> 4) . . . that a convicted felon named Sharon Marie Betker (Capol), white female, 01-28-53 is reported to be in possession of at least 1 handgun, a dark colored semi-automatic handgun, at her residence at the location of 11053 S. 76th St., in the City of Franklin and County of Milwaukee, WI. A known citizen witness, who wishes to remain anonymous, stated that within the last 5 days, the informant has observed BETKER in possession or control of at least one handgun, at the above-described address. In addition, the informant stated that Betker and her husband RICHARD BETKER (w/m 3/12/1949) possess numerous hunting rifles and that they both engage in illegal hunting and the informant has seen stuffed animals like eagles, which are a protected species, in the residence. Affiant checked with the Wisconsin Department of Natural Resources and confirmed that Richard Betker at the above address obtained a Resident Gun Deer License in 2001 and a Small Game License in 2003, thus corroborating the information related to firearms at the residence.
>
> 5) The affiant believes that the informant is a credible person because the informant has given law enforcement officers information, which has been directly corroborated by the knowledge and past experience of law enforcement officers. The informant is a citizen witness with prior criminal convictions but is not currently under indictment in Milwaukee County for any criminal charges.
>
> 6) The affiant knows that guns and drugs are very commonly bought and sold together and that firearms are maintained in drug distribution houses to protect the occupants from robbery based on large quantities of cash traded in exchange for controlled substances. Affiant knows that firearms are not readily consumed and that they remain in close proximity to individuals engaged in ongoing criminal enterprises.

---

[1]The record does not indicate why a City of Milwaukee police officer sought a search warrant for a home in the City of Franklin, which has its own police department.

> . . .
>
> 9) That it is common for more than one firearm to be located in a residence and that the information presented in this affidavit forms the basis to request a NO-KNOCK warrant. Specifically affiant states that the possession of firearms on person(s) involved in criminal activity, or having immediate access to them, possesses a severe and real threat to the safety of the officers executing the search warrant.
>
> . . .

(Gomez Aff. ¶¶ 4, 5, 6 and 9).

The court commissioner granted Gomez's request for the no-knock warrant, and on August 6, 2006 at about 10:00 p.m. defendant Allen Groszczyk and other officers not including Gomez executed it. Groszczyk entered the Betker home through the rear side door while other officers broke the front window. Although Groszczyk states that he identified himself as an officer, plaintiff indicates that he did not hear any identification, only a lot of commotion. Plaintiff jumped out of bed and grabbed a pistol. Groszczyk entered the living room and saw plaintiff with a gun in his hand and his arm outstretched. Groszczyk fired his weapon striking plaintiff's hand and shoulder.

## II. DISCUSSION

In evaluating defendants' summary judgment motion, I take the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff and may grant the motion only if no reasonable juror could find for plaintiff. Carlisle v. Deere & Co., 576 F.3d 649, 653 (7th Cir. 2009).

In order to succeed on a § 1983 claim, plaintiff must show that (1) defendants deprived him of a federal constitutional right; (2) under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). In the present case, only the first element is disputed.

All but one of plaintiff's claims fail. Among these are his claims against Chief Flynn. Plaintiff does not develop arguments in support of this claim and therefore waives it. Palmer v. Marion County, 327 F.3d 588, 597-98 (7th Cir. 2003). Moreover, to be liable under § 1983 a defendant must personally deprive a person of a constitutional right, Minix v. Canarecci, 597 F.3d 824, 833-34, and Flynn was not personally involved in the present case in any way.

Plaintiff's claims that Gomez, Groszczyk and unknown officers violated his right to bear arms and unlawfully arrested, detained and imprisoned him also fail. Again, plaintiff does not develop arguments in support of these claims, and therefore waives them. Further, neither Gomez nor Groszczyk seized plaintiff's guns or arrested or detained plaintiff. And plaintiff makes no attempt to identify the unknown officers. See Hessel v. O'Hearn, 977 F.2d 299, 305 (7th Cir. 1992).

Plaintiff also claims that Groszczyk acted unreasonably by entering his home and shooting him without knocking and announcing his presence and purpose. However, Groszczyk was entitled to rely on the no-knock warrant because nothing on its face suggested that it was deficient. Morris v. County of Tehama, 795 F.2d 791, 795 (9th Cir. 1986) (citing Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 568 (1971)). Moreover, Groszczyk did not fire his gun until after he saw plaintiff pointing a gun in the direction of officers assisting the search. Groszczyk had a responsibility to protect his fellow officers, and under the circumstances no reasonable juror could find that his conduct was objectively unreasonable. See Graham v. Connor, 490 U.S. 386, 395 (1989); Scott v. Edinburg, 346 F.3d 752, 7567 (7th Cir. 2003).

Plaintiff also claims that the City violated his Fourth Amendment rights. To establish municipal liability under § 1983, plaintiff must show that his injury resulted from a practice so settled and widespread as to constitute a custom with the force of law. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978). A single isolated incident of wrongdoing by a non-policy maker is generally insufficient to establish municipal liability. Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1326 (1992). Plaintiff argues that the City's practice of using a form affidavit that includes exaggerated allegations for the purpose of obtaining a no-knock warrant violates the prohibition provided in Richards v. Wisconsin, 520 U.S. 385, 394 (1997) and constitutes such a practice. However, plaintiff's argument fails because plaintiff presents no evidence in support of it. Plaintiff refers only to Gomez's affidavit and offers no evidence of other instances involving form affidavits. See Henry v. Farmer City State Bank, 808 F.2d 1228, 1237 (7th Cir. 1986) (stating that establishing "one specific incident in which the plaintiff suffered a deprivation will not suffice"). In addition, plaintiff did not mention this claim prior to his brief opposing summary judgment. See Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) (stating that a "plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment").

I turn next to plaintiff's claim against Gomez for violating his Fourth Amendment rights by making false or misleading representations in his application for the no-knock warrant. See, e.g., Olson v. Tyler, 771 F.2d 277, 281 (7th Cir. 1985). Plaintiff claims that Gomez's misrepresentations caused the court commissioner to issue the warrant and led to an unreasonable search of his home and ultimately to his being shot. For this claim to survive, plaintiff must present sufficient evidence to enable a reasonable jury to conclude

that Gomez made false or misleading statements in his affidavit either intentionally or with reckless disregard for the truth. Beauchamp v. City of Noblesville, 320 F.3d 733, 742-43 (7th Cir. 2003). Plaintiff can satisfy this burden by showing that Gomez seriously doubted whether his statements were true, had obvious reason to doubt the accuracy of the statements or omitted facts that he knew would negate probable cause. Id. at 743. In addition, the false or misleading statements must have been necessary to the probable cause determination. Id.

Plaintiff presents sufficient evidence to enable a reasonable jury to conclude that Gomez intentionally or recklessly made false or misleading representations to the court commissioner without which the affidavit would not have supported a probable cause determination. Gomez's first arguably false statement was his assertion that "A known citizen witness, who wishes to remain anonymous, stated that within the last 5 days, the informant has observed [Sharon] Betker in possession or control of at least one handgun, at the above-described address." (Gomez Aff. ¶4). A reasonable jury could conclude that this statement was false and that Gomez made it intentionally or recklessly because Capol states that she told Gomez that she had not observed Betker with a handgun within the previous five days and, in fact, had not been in Betker's home for years. In his deposition, Gomez acknowledged not knowing how Capol "knew" that Betker had a handgun in her home.

Gomez's second arguably false or misleading statement was his assertion that "the informant stated that [Sharon] Betker and her husband Richard Betker (w/m 3/12/1949) possess numerous hunting rifles and that they both engage in illegal hunting . . ." (Gomez Aff. ¶4). A reasonable jury could conclude that this statement was false or misleading and

6

that Gomez made it intentionally or recklessly. This is so because Capol states that she told Gomez that Richard Betker, not Sharon, possessed rifles and illegally hunted, and that she had not been in the Betker home for years and thus had no information about whether Richard Betker currently possessed rifles. Further, in his affidavit in support of defendants' summary judgment motion, Gomez acknowledges that Capol told him that only Richard possessed rifles.

Gomez's other arguably misleading statements were that "guns and drugs are very commonly bought and sold together and that firearms are maintained in drug distribution houses to protect the occupants from robbery based on large quantities of cash. . ." and that "firearms. . . remain in close proximity to individuals engaged in ongoing criminal enterprises." (Gomez Aff. ¶6). Sometime after Gomez prepared the affidavit, another person placed four slashes through the statement pertaining to drugs, leaving the statement pertaining to ongoing criminal enterprises intact. A reasonable jury could conclude that both the statements relating to drugs and ongoing criminal enterprises were misleading in the context of the present case and that Gomez made them intentionally or recklessly. This is so because the statements implied that the Betkers were involved in drug distribution or ongoing criminal enterprises, and Gomez appears to have had no basis for suggesting that they were.

I ask next if the arguably false or misleading statements were material, i.e. whether, without them, the affidavit supported a probable cause determination. See Molina v. Cooper, 325 F.3d 963, 968-69 (7th Cir. 2003). In order to have supported such a determination, the affidavit had to have contained sufficient evidence to induce a reasonably prudent person to believe that a search would uncover evidence of a crime.

7

Junkert v. Massey, 610 F.3d 364, 367-368 (7th Cir. 2010). After excising Gomez's arguably false or misleading statements, I cannot conclude that the affidavit supported a finding of probable cause. Actually, after excising the arguably false or misleading statements, there is virtually nothing incriminating left in the affidavit. I must excise Gomez's statement that Sharon "is reported to be in possession of at least 1 handgun" (Gomez Aff. ¶4) because the purported basis for the statement – that Capol stated that she had recently observed Betker with a gun – was arguably false.

Defendants assert that Gomez stated that plaintiff possessed hunting rifles and had obtained hunting licenses and these statements supported a finding that Sharon possessed rifles. However, for several reasons, I must excise the statement that defendants rely on. First, Gomez did not state that plaintiff possessed hunting rifles but rather that he and Sharon did, and this statement appears to have been false. This is so both because Capol states that she told Gomez that Richard, not Sharon, possessed rifles (a statement which Gomez confirms) and that she had no knowledge of whether Richard currently possessed rifles because she had not been in the Betker home in years. The only statement about hunting rifles or hunting that appeared in the affidavit that was not arguably false or misleading was that plaintiff had obtained hunting licenses, and it could not be reasonably inferred from this statement that Sharon possessed rifles.

Even assuming that the court commissioner could have reasonably concluded from the non-excised portions of the affidavit that plaintiff possessed rifles, the commissioner could not have reasonably concluded that there was probable cause that Sharon also did. In order to support a conclusion that Sharon constructively possessed plaintiff's rifles, the affidavit would have had to have asserted that the rifles were stored in an area over which

8

Sharon had control and that she intended to exercise control over them. See Wis. JI – Criminal 1343, see also State v. Loukota, 180 Wis. 2d 191, 201-02 (Ct. App. 1993). The affidavit contained no such representations.

Defendants argue that because Wisconsin is a marital property state, see generally Wis. Stat. Ch. 766, if plaintiff possessed hunting rifles, ipso facto, Sharon also did. However, this contention fails for several reasons. First, defendants make no attempt to develop a legal argument in support of it and, therefore, waive the issue. See Central States. SE & SW Areas Pension Fund v. Midwest Motor Express, 181 F.3d 799, 808 (7th Cir. 1999) (stating that arguments not meaningfully developed are waived). Even if defendants had not waived the argument, it would fail. In his affidavit, Gomez said nothing about who owned the rifles or whether they constituted marital property. Thus, the marital property factor played no part in the court commissioner's probable cause decision, and I may not consider it. Even if I could consider it, Wis. Stat. § 941.29(2)(a) proscribes possession of a firearm not ownership, and the marital property law deals with ownership. Possession is physical control whereas ownership is legal title. State v. Black, 242 Wis. 2d 126, 142 (2001). Thus, even if Sharon had a marital property interest in the rifles this would not establish probable cause that she possessed them.

Even assuming that the court commissioner could have found probable cause to search the Betker home based on the non-excised portion of Gomez's affidavit, it would nevertheless be inappropriate for me to grant defendants' motion for summary judgment. This is so because a reasonable jury could conclude that Gomez intentionally or recklessly made material false or misleading representations that caused the court commissioner to issue a no-knock warrant. A judicial officer may not issue a no-knock warrant unless he

or she reasonably suspects that requiring the police to knock and announce their identity and purpose would be dangerous or futile or would inhibit the effective investigation of a crime. See Richards, 520 U.S. at 394. In the present case, Gomez asked for a no-knock warrant because plaintiff and Sharon presented "a severe and real threat to the safety of the officers executing the search warrant." (Gomez Aff. ¶ 9). However, Gomez's characterization of the situation that officers would encounter in the Betker home was based on several arguably false or misleading statements. The first was his statement that an informant stated that she had observed guns in the Betker home within the last five days. The second was his suggestion that the Betkers were engaged in criminal activity beyond the possible possession of firearms. (See Gomez Aff. ¶ 9, wherein he stated that the possession of firearms by persons "involved in criminal activity . . . possesses [sic] a severe and real threat to the officers . . .") Nothing in the record suggests that Gomez had a basis for suggesting that the Betkers were engaged in criminal activity beyond the possible possession of firearms. And, if I excise the arguably false or misleading representations discussed above, there is literally nothing left in Gomez's affidavit suggesting a basis for a no-knock warrant. The remaining portions of the affidavit indicate little more than that the Betkers were a middle aged couple, that Richard Betker had obtained hunting licenses and that Sharon had a twenty-five year old theft conviction.

      Finally, defendants argue that plaintiff's claim fails because Gomez is entitled to qualified immunity. Governmental actors performing discretionary functions enjoy qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Estate of Escobedo v. Bender, 600 F.3d 770, 778 (7th Cir. 2010).

Gomez is obviously not entitled to qualified immunity. "Where the judicial finding of probable cause is based solely on information the officer knew to be false or would have known was false had he not recklessly disregarded the truth, not only does the arrest violate the fourth amendment, but the officer will not be entitled to good faith immunity." Olson, 771 F.2d at 282.

### III.  CONCLUSION

For the reasons stated, defendants' motion is **GRANTED** as to all of plaintiff's claims except his claim against defendant Gomez for making arguably false or misleading representations in his application for a no-knock search warrant for plaintiff's home. As to that claim, defendants' motion is **DENIED**.

Dated at Milwaukee, Wisconsin, this 4th day of August 2011.

/s_____
LYNN ADELMAN
District Judge